IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **HEAVY DUTY PRODUCTIONS, LLC** | § | |
| | § | |
| V. | § | A-14-CV-974-LY |
| | § | |
| **BANDWDTH, LLC, COHERENTRX,** | § | |
| **INC., and THOMAS R. HARTLE** | § | |

## ORDER ON MOTION TO RECEIVE EVIDENCE & SUPPLEMENT TO REPORT AND RECOMMENDATION

On May 12, 2015, the undersigned submitted a Report and Recommendation in this case on the Defendants' Motion to Dismiss for Lack of Jurisdiction. Dkt. No. 8. On May 26, 2015, Heavy Duty Productions filed Objections to the Report and Recommendation, along with a Motion to Receive Evidence, asking the district judge to consider additional evidence that had not been submitted when the undersigned made his recommendation on the motion to dismiss. Dkt. Nos. 10, 11. The district judge has in turn referred that motion to the undersigned for resolution, and has further "recommit[ted] this matter to [the undersigned] for further consideration in light of Plaintiff's motion, including, if deemed proper by the magistrate judge, an amended report and recommendation." Dkt. No. 15. As is discussed in detail below, the Court concludes that the motion to receive evidence should be denied because Heavy Duty has failed to explain why it did not present the evidence earlier, and further that, even if the evidence were considered the result is the same: the case should be dismissed for lack of jurisdiction.

**I.     Motion to Receive Evidence**

Pursuant to FED.R.CIV.P. 72(b)(3), Heavy Duty asks the Court to receive further evidence on the motion to dismiss. Specifically, Heavy Duty submits a Second Declaration of Jim Lewin, and as Exhibit A to the declaration, 11 pages of emails. Dkt. No. 9-1. Heavy Duty claims that the

Second Declaration contains "additional evidence related to Defendants Bandwdth and Hartle's contacts in the State of Texas with HDP and with other separate contractors in this State. It provides additional support that the Defendants maintained systemic and specific contacts with the Western District of the State of Texas, and that personal jurisdiction should lie herein." Dkt. No. 10 at 2. Bandwdth, Hartle, and CoherentRx (collectively, "Bandwdth") oppose the request, asserting that all the evidence presented was available to Heavy Duty at the time it filed its Response to the Motion to Dismiss and months prior to the submission of the R&R, and allowing its filing now amounts to affording Heavy Duty a second bite at the apple.

28 U.S.C. § 636(b)(1) provides that a district court, in conducting de novo review of a magistrate judge's report and recommendation, "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." Both § 636 and the parallel Rule of Civil Procedure use the discretionary term "may" in describing the district court's authority to receive new evidence after a report and recommendation has been submitted. 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b). The reason for this is to prevent "litigants [from] . . . us[ing] the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998). The Fifth Circuit identified four factors courts should consider in making this decision:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the [] motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (citing *Freeman*, 142 F.3d at 852).

Before considering these factors, a brief summary of Heavy Duty's new evidence is warranted. In summary, the Second Declaration states that:

- Zach Reed, an independent contractor working for Bandwdth became a resident of Austin in 2011, and was assigned a title and an "@Bandwdth" email address;

- Elizabeth McFarlane DeMartino, an independent contractor hired by Bandwdth, already lived in Austin *before* Heavy Duty relocated there in August of 2011;

- one of Heavy Duty's obligations was to monitor Reed and DeMartino's work;

- Heavy Duty, along with these two contractors, constituted the "Austin office" of Bandwdth;

- Hartle traveled to Austin to manage and participate in ongoing Bandwdth projects; and

- Hartle specifically visited Austin for almost a week in March of 2011 to discuss ongoing business between Heavy Duty and Bandwdth, and the rest of the Austin-based team.

Dkt. No. 9-1. Attached to Lewin's declaration are a number of emails in which Lewin communicates with Reed and DeMartino about Bandwdth projects. Not all of this is new information. Indeed, the evidence described in the last two bullet points was presented with the original motion, and considered by the undersigned. The fourth bullet point is not a new fact. but rather is an argument.[1]

---

[1] Some of Lewin's statements in the Second Declaration differ in sum and substance from statements in his First Declaration. For instance, in his First Declaration he states:

> Mr. Hartle came to Austin during SXSW from approximately March 14-20, 2011, stayed at my home, and met with me regarding the ongoing business between Heavy Duty Productions and Bandwdth.

Describing this same visit, his Second Declaration states:

> Mr. Hartle specifically visited Austin, Texas for almost a week in March 2011 to discuss ongoing business between HDP, Bandwdth, and the rest of the Austin-based team. During this time, Mr. Hartle stayed with me and worked directly with me out of HDP's home office [Lewin's apartment].

3

So, at the end of the day, the truly *new* evidence is that two independent contractors who resided in Austin in parts of 2010 and 2011 did Bandwdth work from Austin, and interacted with Lewin via email and telephone while Lewin was also in Austin.

Heavy Duty does not explain why it did not submit this evidence earlier. Since everything related in the Second Declaration involves events from 2010 and 2011, and is based on Lewin's personal knowledge, the evidence was clearly available to Heavy Duty when it responded to the Motion to Dismiss in November 2014. Similarly all the emails submitted are either "to" or "from" Lewin, and took place in 2010 and 2011. Rather than offer an explanation for its tardiness, Heavy Duty merely states that it submits this evidence to "provide additional support" for its contention that Defendants maintained systemic and specific contacts with the Western District of Texas. When presented with the same sort of scenario, the Fifth Circuit found that because the party "provid[ed] no reason why it failed to introduce the evidence earlier, the district court clearly did not abuse its discretion in disallowing this evidence." *Performance Autoplex II*, 322 F.3d at 862. For this same reason, the Court **DENIES** the Motion to Receive Evidence (Dkt. No. 10).

Having so ruled, in the next section the Court explains why, even if the evidence were considered, it would not change the result on the jurisdictional question.

## II. The Supplemental Evidence Would Not Change the Result

The Court's Report and Recommendation set out at length the reasons why Heavy Duty had failed to demonstrate that Bandwdth had sufficiently targeted its activities at Texas so as to subject

---

The First Declaration represented that Hartle came to Austin for SXSW, and while in town, discussed Bandwdth's business with Lewin. The Second Declaration embellishes this, and suggests that Hartle came to Austin solely to meet with Heavy Duty and Lewin, to manage and check on that business, and—conspicuously—makes no mention of SXSW.

it to suit here. The Court will not repeat that discussion. Instead, the Court will focus on what is new in Heavy Duty's argument, and explain why the new evidence is still insufficient to demonstrate the Court has jurisdiction over any of the Defendants.

To boil it down to its essence, Heavy Duty's new evidence presents this additional argument to support its assertion that the Court has jurisdiction over Bandwdth: (1) Bandwdth had independent contractors working in Austin during the contract with Heavy Duty; (2) Heavy Duty's responsibility under its agreement with Bandwdth included supervising these independent contractors; (3) Heavy Duty was also located in Austin, and its work with the independent contractors took place in Austin; and (4) this work by Heavy Duty comprises a portion of the fees it is suing for.

Before addressing this argument, it is important to first note what Heavy Duty is *not* arguing. It is not arguing that because Bandwdth employed two independent contractors in Austin there is *general* jurisdiction over Bandwdth in Texas courts. Heavy Duty has never contended that there is general jurisdiction here—including in its Objections to the R&R. Heavy Duty's only discussion of the issue was in its Response to the motion to dismiss, where it stated that the "general jurisdiction analysis is irrelevant when, as here, personal jurisdiction so clearly exists under specific jurisdiction." Dkt. No. 4 at 4 (emphasis removed). Moreover, the cases are clear that the presence of independent contractors in a state is insufficient to demonstrate general jurisdiction. *See Smith v. Piper Aircraft Corp.*, 425 F.2d 823, 826 (5th Cir.1970) (actions of an independent contractor in a forum state are not sufficient, absent other contacts, to subject a nonresident corporation to personal jurisdiction); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987) (manufacturer's maintenance of distribution network in the forum insufficient to support finding of general jurisdiction).

As noted in the R&R, the focus of a specific jurisdiction analysis is on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, ⎯⎯ U.S. ⎯⎯, 134 S.Ct. 1115, 1121 (2014). Here, that means the focus is on Bandwdth, Texas, and the suit by Heavy Duty to collect on Bandwdth's unpaid bill. The fact that Heavy Duty was located in Austin is simply not a factor that may support a finding of jurisdiction. *Id.* at 1122 (stating that the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State"). This is even more so here, given that Heavy Duty was not even located in Texas when the parties' initiated their relationship.

Heavy Duty contends that the new evidence shows that the work it is suing to be paid for was completed in part in Austin, because the work included Lewin interacting with the two contractors in Austin. That, however, overstates what the new evidence demonstrates. First, Heavy Duty's claim that its contract required it to "monitor and manage" the work of the two independent contractors (Dkt. No. 9-1 at ¶ 4) is not borne out by the evidence. There is no written contract between Heavy Duty and Bandwdth. Rather, there are only two invoices—one dated December 23, 2011, and the other dated April 28, 2014. Dkt. No. 1-4 at 10-11. The latter contains no description of the services rendered, and appears to be effectively a late notice. The former contains only the following description under the heading "service:"

- Assist CEO with business plan, investor decks and presentation materials;
- Consult on initial product strategy and staffing;
- Manage product development, troubleshooting and quality assurance

Dkt. No. 1-4 at 11. This invoice was created after the fact, as it is dated December 23, 2011, but covers "services rendered on various projects from May 20, 2010 to March 31, 2011." Thus, the

evidence does not demonstrate that Heavy Duty was contractually bound to supervise the two Austin-based developers.

Further, even if the evidence suggested that Lewin's responsibilities included some sort of oversight of Bandwdth developers, there is no evidence that it contemplated that work would be done in Texas. As all parties agree, Bandwdth operated via a team of independent contractors located in California, Buenos Aires, and beyond. There is no evidence that when the relationship started, any Bandwdth contractors lived in Austin, or that Bandwdth required Heavy Duty to perform any work in Texas. It is clear that the work done by both parties to this transaction was work that could be done anywhere, and that they both chose to operate in that manner. So the fact that Bandwdth contracted with two Austin residents to work on Bandwdth projects does not indicate that Bandwdth was targeting activity at Texas. Bandwdth was in the business of developing "apps" and it contracted with individuals all over the world to carry out the development of these apps. Whether these independent contractors lived in Austin, Texas, or Buenos Aries, Argentina, or were sitting at a coffee shop in New York City while working on Bandwdth's business was pure happenstance.

Lewin repeats his claim that Bandwdth had a "virtual office" in Austin, and attempts to shore it up in his Second Declaration by claiming that the two independent contractors, along with Heavy Duty, constituted this "virtual office." But as the undersigned stated in the R&R, something called a "virtual" office carries little weight in establishing jurisdiction, because jurisdiction requires an analysis of a party's real—not virtual—contacts with the forum state. Heavy Duty has failed to establish that Lewin's work-related contacts with these independent contractors had any relationship to Austin. In fact, despite the fact that Lewin and the independent contractors all lived in Austin, the evidence establishes that their interactions occurred almost exclusively by email, and there is no

evidence before the Court that they ever physically met to work together. Thus, the contractors could just have easily have been in Buenos Aires and it would not have made a difference to the work that they were doing.

Thus, even if considered, Heavy Duty's late-submitted evidence does not demonstrate that Bandwdth had formed the "necessary connection" with the forum State for this Court to maintain jurisdiction over it. *See Walden*, 134 S.Ct. at 1122. Further, none of the evidence addresses the lack of jurisdiction over CoherentRx or Thomas Hartle, and has no relevance to the fraudulent transfer claim brought against them. The recommendations on those issues are thus unaffected by the new evidence.[2]

### III. Conclusion

The Motion to Receive Evidence (Dkt. No. 10) is **DENIED**. Further, the undersigned continues to **RECOMMEND** that the District Court **GRANT** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 3) and **DISMISS** this case **WITHOUT PREJUDICE** for lack of jurisdiction.

SIGNED this 26th day of June, 2015.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[2] In its Reply, Heavy Duty requests the Court to allow it jurisdictional discovery to resolve and factual issues. Dkt. No. 14 at 5. Given the conclusions reached above, the Court does not believe that discovery is likely to result in any evidence that would alter the outcome on this issue, and instead would only increase the (no doubt already large) costs of a suit that is only seeking to recover $50,000 to $60,000 in damages.